WALTER S. WELCH, Trustee, *et al.*, Plaintiffs-Appellants, *v.* THE CITY OF EVANSTON, Defendant-Appellee.—(THE CITY OF EVANSTON, Plaintiff-Appellee, *v.* J. P. SCHERMERHORN & COMPANY *et al.*, Defendants-Appellants.)

First District (1st Division)    No. 79-1321

Opinion filed August 25, 1980.—Rehearing denied September 22, 1980.

Ross S. Welch, of Chicago, for appellants.

Jack M. Siegel, Corporation Counsel, of Evanston, for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Walter S. Welch, as trustee under a trust agreement dated June 28, 1974, and Ross S. Welch (plaintiffs) brought this action for declaratory judgment and injunctive relief against the City of Evanston (defendant) to prevent defendant from eliminating a two-room basement apartment in a building owned by plaintiffs. Defendant filed a quasi-criminal complaint against plaintiffs seeking elimination of the apartment. These actions were consolidated by the circuit court. After a bench trial, the court entered judgment in favor of defendant in both actions, fined plaintiffs $10 and ordered plaintiffs to terminate the use of the apartment within 90 days. Plaintiffs appeal.

The apartment is located in a three-story brick apartment building in Evanston. Plaintiffs acquired the building in 1974. The original owners of the property applied for a building permit on December 1, 1925, to construct a three-story brick 10-apartment building. The permit was issued December 2, 1925.

At that time, the 1921 Evanston zoning ordinance was in effect. This zoned the property for commercial use and permitted up to 16 apartment units. In 1927, the ordinance was amended to increase the lot area requirement per apartment. Fewer than 10 apartment units would have been permitted on the property. Under the present (1960) Evanston zoning ordinance, the property is located in a "B-2 Business District" and only three apartment units could be built thereon.

In April 1966, while the building was still under prior ownership, an inspection by defendant showed 11 apartments in the building, including two in the basement. The owner applied to the zoning board of appeals for a variance. The board recommended the appeal be denied. Defendant's city council concurred in this decision. In a letter to defendant, the then managing agent for the building indicated one of the basement apartments would be vacated on September 1, 1966, and would be kept vacant "until we are able to trace the ownership back to such a time as is required to justify this as an acceptable 11 apartment building."

Numerous inspections of the building were made after the vacation of the 11th apartment. As late as July 12, 1976 (after plaintiffs acquired the building) a certificate of inspection showed the building contained 10 apartments and conformed to the requirements of the zoning ordinance. Commencing on October 1, 1976, the apartment was leased to a tenant by plaintiffs.

Ross Welch, a qualified attorney, testified that prior to acquiring the property he inspected the building including the apartment in controversy. The apartment was occupied by a tenant. Welch did not make a request to defendant to verify the zoning status of the property nor did he inspect any of defendant's records prior to purchasing the property. Mr. Welch testified it was not the custom for realty closing attorneys to apply to municipalities for certificates of compliance before closing a purchase of an apartment building. Mr. Welch also stated he had no knowledge of the application for a zoning variance made by the previous owners in 1966.

Jack Schermerhorn testified he was the plaintiffs' managing agent of the apartment building since 1974. His management company was also a defendant in the quasi-criminal case. In his opinion the trim, flooring, walls, door and window openings, plumbing and lighting fixtures, wiring and appliances in the apartment in controversy were installed at the time of the construction of the building. Schermerhorn knew a plumber contractor named Carl Berquist who had lived in the basement apartment from 1925 until 1967. The apartment had been occupied continuously by a tenant since 1974.

Schermerhorn stated that in 1925 "it was the practice of the City of Evanston to have in a building permit one additional apartment for the janitor in addition to the number of apartments listed." He had become familiar with the practices of defendant by looking at building permits, plans and layouts of buildings built in 1925 or earlier. On cross-examination, Schermerhorn testified it was the practice to designate a janitor's apartment on the plan. Schermerhorn further stated he had never examined defendant's records to determine the legal status of the building in question.

Michael Garland, assistant director of the department of inspections and permits for defendant, testified it was customary practice in the 1920's not to list the janitor's apartment as a unit in the building permit if it was the only unit in the basement. However, if there was one apartment established in the basement by virtue of the permit or plans of the building, there would be no such practice as permitting a second apartment in the basement for the janitor. Garland further testified a person interested in buying an Evanston apartment building could request defendant to inspect the building for compliance with the zoning and building codes free of charge. Defendant had performed this service since 1971.

Ed Nehring, property inspector for defendant, testified he had been employed in this capacity for 15 years. In 1966 Nehring inspected the building and the basement apartment. That apartment was occupied by a Mrs. Hydrack. There were 11 apartment units in the building in 1966. After the action by the city council in 1966, the use of the 11th apartment was discontinued. On October 20 and 26, 1976, Nehring reinspected the building and found the 11th apartment was reoccupied and there were new fixtures in it.

Nehring stated he had known Carl Berquist. In 1966, Berquist lived at 920 Greenwood Avenue and not at the apartment in question. Nehring had examined the telephone book for 1965 and 1966 which showed Berquist lived at that address. Nehring also examined the "Polk City Directory" which lists the names of the occupants of buildings in Evanston according to address. He examined these directories for the years 1935, 1937, 1948 and 1963. In 1935, 10 family names were listed at the address of the building in question. In 1937, 11 family names were listed; in 1948, nine names; and in 1963, seven names. In addition, the 1948 book showed Berquist lived at 920 Greenwood.

Nehring further testified that in 1925 it was not the custom not to include the janitor's apartment in the total number of apartments when applying for a permit. Based on his examination of many plans and permits the only exception would be if the apartment were the only one in the basement and the janitor actually lived on the premises. Then the apartment would not be included in the number of units listed on the permit. Also, in a small apartment building, such as the one in question, it was not "uniformly accepted" to install a janitor's apartment.

Nehring corroborated Garland's testimony that defendant would inspect an existing apartment building at a purchaser's request and certify the building's compliance with zoning and building requirements. There is no requirement the prospective purchaser provide a survey before defendant so certifies.

David Rasmussen, an appeals officer for the defendant, testified he had seen plans for buildings constructed in the 1920's that showed a janitor's apartment but the permits for these same buildings did not count such apartments in the number of units. However, he refused to state this was a customary practice.

Albert Welch, brother of plaintiffs, testified he had called defendant's building department and requested a certificate of compliance as to zoning and building requirements of a certain building. A person at the department told him he would need a survey to get the certificate.

An evidence deposition was received by the court. In the deposition, Folke Gustavson testified he was 81 years old and had moved into the basement apartment in February or March 1927. A janitor named Peterson had lived in the apartment before him. The 1927 suburban phone book indicates Folke Gustavson lived in the building.

Prior to trial, plaintiffs served on defendant a request for admission of facts pursuant to Supreme Court Rule 216. (Ill. Rev. Stat. 1979, ch. 110A, par. 216.) Among the facts asked to be admitted were:

"1—That the garden apartment unit involved in the above cause was built in 1925 at the time the building in which it is located was built.

2—That the baseboard, electric fixtures, room trim, kitchen and bath plumbing fixtures, medicine cabinet in bath in the instant apartment (except for replacements due to age) are the same style and age as the other apartments in the building.

3—That at the time the building permit was taken out for the building in which the instant apartment is located, it was not customary to count and ask a permit for the apartment to be furnished to the building janitor."

Defendant did not make a timely response to the request. (See Ill. Rev. Stat. 1979, ch. 110A, par. 216(c).) The trial court ruled numbers 1 and 2 above were admitted facts and were also proved by the evidence. The trial court also stated:

"On 3, because of the failure to answer, the Court started with the accepted fact that it was not customary to count and ask a permit for the apartment to be furnished to the building janitor. However, you [plaintiffs] put a witness on the stand, Mr. Jack Schermerhorn, whose testimony was to the contrary. His testimony was that the practice was to designate the janitor's apartment on the plan. Therefore, that admission has been made negative by the testimony of your witness."

The trial court found the 11th apartment was not a legal nonconforming use because the building permit was for only 10

apartments and there was an abandonment of the use of the 11th apartment in 1966.

Both parties agree two basic questions in this appeal are: first, whether the use of the 11th apartment was legal when established; and second, whether the use of this apartment was abandoned subsequent to its establishment. For the sake of clarity, we will address the contentions of plaintiffs within the framework of these two basic issues.

## I.

■■ Plaintiffs do not attack the validity of the zoning ordinances applicable here. The 1960 Evanston zoning ordinance defines a "nonconforming use" as "[a] lawfully established use of land, buildings, structures or premises * *. *." Thus, we must determine first whether the use of the 11th apartment was "lawfully established." If the use was illegal at its inception, it "cannot be a nonconforming use" (*County of Cook v. Triem Steel & Processing, Inc.* (1958), 19 Ill. App. 2d 126, 129, 153 N.E.2d 277, *appeal denied* (1959), 15 Ill. 2d 613; see also *City of Rockford v. Sallee* (1970), 129 Ill. App. 2d 75, 79, 262 N.E.2d 485), and cannot be protected from elimination for violation of present zoning ordinances.

The trial court found the 11th or basement apartment was built in 1925, at the time the building was erected. The uncontroverted deposition of Gustavson indicates he had lived in the basement apartment in 1927 and a janitor named Peterson lived there before him. The 1927 phone book shows Gustavson lived in the building. Defendant did not present convincing evidence to the contrary. Thus, we agree with the finding made by the careful trial judge.

Since the apartment was established when the building was erected in 1925, the 1921 zoning ordinance is determinative of whether 11 apartment units could have been built on the property. As stated above, according to the 1921 ordinance, a maximum of 16 units would have been allowed on this property, given its size. However, this does not necessarily mean the use of the 11th apartment was "lawfully established."

The application for a building permit submitted by the original owner was signed by the builder and owner. The application provided:

> "The undersigned herewith applies for a permit to build a 3 Story, Brick 10 apt Bldg and hereby agrees upon issuance of said permit to conform to and comply with the conditions of the same and the ordinances of the City of Evanston, so far as they may apply to any work set forth in this application.
>
> Same to be located and built in strict accordance with accompanying description, plans and specifications, which are hereby submitted for your approval."

■■ The language of this application is clear. It binds the owner "to conform to and comply with the conditions of the [permit] * * * " and to build "in strict accordance with accompanying description * * *." A permit was issued pursuant to this application. In our opinion, the application for building permit, and the permit issued subsequent thereto, legally prevented the owner from building an 11-unit apartment building.

Plaintiffs contend that by defendant's failure to timely answer the request for admission of facts, defendant has admitted "it was not customary to count and ask a permit for the apartment to be furnished to the building janitor." In this regard, plaintiffs urge it was improper for the trial court to reject this admission because Schermerhorn's testimony did not contradict the admission.

■■ It is not necessary to pass upon the propriety of the judge's comments in this regard. We do not consider any of the three requested admissions quoted above to have been admitted. Plaintiffs were aware their request for admission was not answered in a timely manner. Nevertheless, plaintiffs introduced evidence not only as to the custom and practice in the 1920's, but also of the fact of the existence of the 11th apartment when the building was erected. This conduct at trial waived plaintiffs' right to rely on defendant's admissions. See *Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, 518, 377 N.E.2d 21.

■■ As noted previously, the evidence supported the conclusion the 11th apartment existed when the building was erected. However, as for evidence of the custom of not counting the janitor's apartment in an application for a permit, at best we can only say the evidence was conflicting. Defendant's witnesses indicated there was no such custom when there were two apartments in the basement or when the building was small. Even plaintiffs' own rebuttal witness, David Rasmussen, refused to say this was a customary practice. "[F]or custom or usage to be binding it must be uniform, and so well established as to have the force of law." (*Solomon v. City of Evanston* (1975), 29 Ill. App. 3d 782, 791, 331 N.E.2d 380.) The trial court found there was no such custom. We cannot disturb this finding unless it is against the manifest weight of the evidence. (*Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, 516-17.) In our opinion, the finding of the able trial judge in this respect is strongly supported by the evidence.

Furthermore, even if such a custom did then exist, plaintiffs' argument would be without merit "[f]or it has been consistently held that a custom can not be invoked to avoid a settled rule or law or to prevail against or overcome a statute and such an alleged custom is therefore not binding." *Solomon*, 29 Ill. App. 3d 782, 791.

We therefore conclude the use of the 11th apartment was not "lawfully established" and thus could not be a nonconforming use.

## II.

Since it is our opinion the use of the 11th apartment was illegal from its inception, it becomes unnecessary to examine whether the use continued without abandonment. However, even assuming the use was legal at its inception, we agree with the trial court that this use was subsequently abandoned.

The 1960 Evanston zoning ordinance provides (section XI, E2):

> "If a nonconforming use of a building or structure is discontinued for a period of 120 days, it shall not be renewed; and any subsequent use of the building or structure shall conform to the use regulations of the district in which the building or structure is located."

It is undisputed the previous owner of the building vacated and stopped renting out the 11th apartment sometime in 1966. It is also undisputed this apartment remained vacant for more than the 120-day period stipulated in the ordinance as the maximum time the use could be discontinued before conformity to the present use regulations became necessary.

However, plaintiffs contend the previous owner had no intention of abandoning the use of the 11th apartment and stopped renting the apartment only because of the "erroneous" denials of a zoning variation by defendant's board of appeals and city council. Plaintiffs thus argue the actions of the previous owner did not constitute an abandonment or discontinuance of the use of the 11th apartment. We disagree.

■■ As plaintiffs point out, it has been held that "[m]ere cessation of use will not, per se, result in a loss of the right to resume such use" and "[t]here still must be an intent by the owner to abandon such nonconforming use * * *." (*McCoy v. City of Knoxville* (1963), 41 Ill. App. 2d 378, 384, 190 N.E.2d 622, *appeal denied* (1963), 27 Ill. 2d 625, citing *Brown v. Gerhardt* (1955), 5 Ill. 2d 106, 125 N.E.2d 53, and *People ex rel. Delgado v. Morris* (1948), 334 Ill. App. 557, 79 N.E.2d 839.) In the instant case, the evidence is manifest the owner intended to abandon the use of the 11th apartment. In the managing agent's letter to defendant, quoted above, the agent stated they were voluntarily vacating the apartment. The intent to abandon is clear. This is not a case where a use was unintentionally stopped, such as *McCoy*, which involved the inability of the owner to find a tenant for his nonconforming use. (41 Ill. App. 2d 378, 388.) The abandonment here was in direct response to defendant's ruling. If the owner felt the defendant's ruling was erroneous, he could have defended his right to the use of the apartment in the courts just as plaintiffs are doing in these proceedings. Instead he chose to and did effectively abandon the use of the apartment.

### III.

Plaintiffs raise other contentions in their briefs. However, our reasoning and decision that the 11th apartment was not a legal conforming use completely precludes all but one of these contentions. Plaintiffs argue defendant should be estopped from prosecuting this violation because defendant did not take steps to eliminate the illegal apartment until 1977 when it filed the quasi-criminal complaint herein; a gap of almost 52 years from the start of the illegal use.

■■ Our supreme court has held that before the doctrine of equitable estoppel can be invoked against a city, there must be a showing of "some positive acts by the municipal officers which may have induced the action of the adverse party. Mere nonaction is not enough." (*Gregory v. City of Wheaton* (1961), 23 Ill. 2d 402, 408, 178 N.E.2d 358; see also *City of Rockford*, 129 Ill. App. 2d 75, 81.) In the instant case, there is no showing of positive action by any of defendant's officials which may have induced plaintiffs or any previous owner to maintain the 11th apartment. In fact, the decisions of defendant's board of appeals and city council in 1966 denying a variance and the subsequent certificates of inspection which specifically state only 10 apartment units are allowed with "one dwelling unit below the second floor" indicate defendant did not approve of an 11th apartment. Apparently, defendant did not notice a violation until Nehring's inspections in October 1976. Shortly thereafter, defendant filed the quasi-criminal complaint. Thus, the doctrine of equitable estoppel is inapplicable here.

### IV.

Plaintiffs filed a motion for new trial with which they submitted affidavits of the previous owner and managing agent of the building. Ross Welch stated in his own affidavit he was unable to produce these witnesses at trial because one was seriously ill and the other could not be located. These affiants stated they never gave up or abandoned the owner's claim that the 11th apartment was legal in all respects. The affiants further stated the apartment was kept vacant for about three years after the agent wrote the letter to defendant in 1966.

The trial court denied the motion. Plaintiffs contend this is newly discovered evidence concerning intent to abandon the nonconforming use so that the trial court should have granted the motion for new trial.

This court has held (*McCullough v. McTavish* (1978), 62 Ill. App. 3d 1041, 1047, 379 N.E.2d 890):

> "Granting or denying a motion for a new trial on the basis of newly discovered evidence lies within the discretion of the trial court and its exercise of that discretion will not be disturbed absent a showing of abuse."

■■ In the instant case, the trial court was well within sound discretion in denying the motion. These affidavits add no new element to the facts brought out at trial. While the affiants may not have abandoned the previous owner's claim the apartment was a nonconforming use, as shown above affiants' predecessors did in fact abandon the use of the apartment for three years.

For the reasons stated, the judgment of the circuit court is affirmed.

Judgment affirmed.

O'CONNOR and CAMPBELL, JJ., concur.