Robert JACKSON, Appellant,

v.

**KENAI PENINSULA BOROUGH for the Use and Benefit of the CITY OF KENAI, Appellee.**

No. S–1104.

Supreme Court of Alaska.

March 6, 1987.

Joseph R. Skrha and Linda MacLean, Drathman & Mysing, Kenai, for appellant.

Timothy J. Rogers, City Atty., Kenai, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

This appeal poses the question whether a city which has ignored an open violation of a zoning ordinance for 18 years can now enforce it. Robert Jackson operates an automobile repair business in a residential zone in the City of Kenai. He argues that the equitable defenses of estoppel and laches should bar the City of Kenai from enforcing the zoning ordinance against him. The trial court granted summary judgment in favor of the city, concluding that 1) while estoppel might be available, the facts of this case fall short of satisfying the necessary elements of that defense, and 2) laches is not available as a defense in zoning cases. Jackson appeals from this grant of summary judgment and the permanent injunction that followed.

We affirm. Jackson does not present facts which can sustain estoppel against the city. In addition, we agree with the trial court that laches is not generally available against a city in an action to enforce a zoning ordinance.

### I.

The parties have stipulated to the following four statements of fact:

1. Robert Jackson operates an automobile repair business at the premises more particularly described as Government Lot 137, Section 34, T6N, R11W, Seward Meridian, Kenai Recording District, State of Alaska.

2. Robert Jackson has operated the automobile repair business continuously at the above location since 1965.

3. Robert Jackson operated the business out of a trailer until 1977 when he built a garage on the above described property and moved the business into the garage.

4. The City of Kenai has never approved a conditional use permit or variance for any automobile repair business at the above described property for Robert Jackson.

The remainder of the facts, viewed in the light most favorable to Jackson,[1] are gleaned from the affidavits of Jackson and Building Inspector Howard Hackney. In 1965, when Jackson's Sales and Service opened, the business of repairing and selling used cars on the premises violated the residential zoning requirements. Jackson operated the business out of a trailer until 1977 when he applied for and received a building permit for the construction of a large garage which he intended to use in the business. The permit indicated that the garage would be 1008 square feet (28 by 36 feet) and have a total value of $3,500.

During the building of the garage, Hackney inspected the premises and approved the continuation of the construction. During this inspection, the presence of numerous cars, an A-frame for pulling engines, numerous pieces of equipment associated with automobile repair, and other tools indicated that the premises were being used as a commercial repair and used car lot.

The garage was completed in 1977 and by 1978 Jackson was conducting his business full time. From 1979 until the present he has applied for and received an Alaska business license, an Alaska motor vehicle dealer registration certificate, and a certificate of authority to collect Kenai Peninsula Borough sales tax. The correct address for his business was specified in these applications.

For an 18–year period, from 1965 until 1983, Jackson openly operated his business without any complaints from the city that he was in violation of the zoning ordinance. During this period, local officials, including mayors, city managers, city council members, building inspectors and zoning commission members did business with Jackson's Sales and Service or had actual knowledge of the operation and location of the business. In 1972 and 1973, various inspectors were on the premises due to the installation of, and eventual litigation over, city water and sewer lines. During the mid–70's, the city removed junked cars

from the premises under the city-sponsored program. In 1979, two years after the garage was constructed, Hackney again visited the premises but did not, despite obvious commercial use, notify Jackson of the zoning violation. Since 1980, Jackson's Sales and Service has been under contract to do repair work on vehicles associated with the Kenai Community College. Jackson has never received a complaint from any neighbor about operating the business in this location.

In July, 1983, 18 years after the origin of the business and six years after the construction of the garage, Hackney notified Jackson by mail that the business was in violation of the zoning ordinance. This was the first notice Jackson received concerning the 18–year zoning violation. The City of Kenai eventually sought an injunction directing Jackson to cease and desist operating his automobile repair business. Notwithstanding Jackson's arguments concerning estoppel and laches, the trial court granted summary judgment for the city and issued the permanent injunction.

If Jackson is forced to move his business, he will incur significant expenses that he believes would cause great hardship and possibly financial ruin. He claims he has invested all of this time, effort and savings into the business and the building.

## II.

A plaintiff's motion for summary judgment must prove not only every element of his cause of action, it must also "expressly disprove every affirmative defense of the answer." *Braund, Inc. v. White*, 486 P.2d 50, 54–55 n. 6 (Alaska 1971) quoting Zack, *A Primer for Summary Judgment*, 11 W. Los Angeles L.Rev. 1 (1970).

Jackson admits that his business violates a valid city zoning ordinance. However, he asserts that the affirmative defenses of equitable estoppel and laches bar the city's enforcement of the ordinance against him. We must determine if the city has met its burden of showing that these defenses are necessarily unavailable to Jackson.

### A. *Estoppel*

The trial judge assumed that the availability of estoppel as a defense against a governmental body in a zoning enforcement action had not been decided in Alaska. He then analyzed case law from Connecticut and Washington and concluded that, although the better view allows a party to invoke the defense of estoppel in appropriate cases, this was not one of them.

■ Both parties as well as the trial court failed to realize that this court has held that an estoppel defense is available in zoning actions. *Municipality of Anchorage v. Schneider*, 685 P.2d 94 (Alaska 1984). *See Fields v. Kodiak City Council*, 628 P.2d 927, 931 n. 3 (Alaska 1981) (*dictum*). In *Schneider*, the property owners, pursuant to a settlement agreement with the municipality, obtained a permit to construct three additional dwelling units on their lot in Eagle River. The municipality then revoked the permit when it discovered that this permit was issued in violation of the recently changed zoning ordinance. The Schneiders filed a motion in superior court to enforce the settlement agreement. Although construction had not yet begun, the Schneiders had spent approximately $24,000 in reliance on the settlement agreement and the erroneously issued building permit. This court rejected the traditional rule under which the government cannot be estopped and held that the municipality was estopped from revoking the permit. *Id.* at 98.

The *Schneider* court described four factors that must be considered when a party attempts to invoke an estoppel defense against a municipality in a zoning case.

The general elements of equitable estoppel are (1) assertion of a position by conduct or word, (2) reasonable reliance thereon, and (3) resulting prejudice. *Jamison v. Consolidated Utilities, Inc.*, 576 P.2d 97, 102 (Alaska 1978). A fourth element, most often explicitly stated in promissory estoppel cases, is that the

estoppel will be enforced only to the extent that justice so requires. *Glover v. Sager,* 667 P.2d 1198, 1202 (Alaska 1983). We believe that this factor should play an important role when considering estoppel against a municipality.

685 P.2d at 97 (footnote omitted).

Examining the present case in light of the four *Schneider* factors reveals that summary judgment against Jackson on the estoppel defense was proper.

The first element of estoppel is the assertion of a position by conduct or word. Jackson claims that the following acts constitute the city's assertion by conduct or word that he relied upon in establishing and expanding his business: (1) the city issued him a building permit for a garage which it knew was for commercial use based on its size and on the building inspector's actual knowledge of his business; (2) city officials individually patronized his business; (3) the city removed junked cars from his premises; and (4) the city did nothing although it knew of his business operation for 18 years. Allegations relating to actions by the State of Alaska in issuing him business licenses and motor vehicle dealer registration are immaterial, as are those relating to his provision of automobile repair service to the Kenai Community College and collection of sales tax for the Kenai Peninsula Borough. Nothing in the record suggests that these organizations are responsible for enforcement of Kenai zoning law.

Generally, courts impose estoppel against a governmental body seeking to enforce a zoning ordinance only upon a showing that the responsible municipal officials undertook *positive* acts which induced the action of the defendant. *Welch v. City of Evanston,* 87 Ill.App.3d 1017, 42 Ill.Dec. 835, 841–42, 409 N.E.2d 450, 456–57 (1980) (quoting *Gregory v. City of Wheaton,* 23 Ill.2d 402, 178 N.E.2d 358, 361 (1961)); *see generally* 7 P. Rohan, *Zoning and Land Use Controls,* § 52.08[4] at 52–

78 (1986); 2 C. Antieau, *Municipal Corporation Law,* § 16A.09 (1981). An "assertion" necessarily implies positive acts rather than mere passive inaction.[2] In *Schneider,* we found that "[t]he settlement agreement and the resulting permit gave the Schneiders *clear authorization to take the steps they did."* 685 P.2d at 98 (emphasis added). The settlement agreement and permit expressly authorized the Schneiders to build the improvements which the municipality later asserted were illegal under the zoning ordinance. This was assertion by both word and conduct. Jackson nowhere alleges that the city or its representative expressly authorized his business operation.

In another context, involving estoppel against a private party, we held that a landlord who accepted rent at a low rate pursuant to an old agreement and *failed* to assert a position consistent with a rent-escalation clause was estopped from enforcing the clause. *Altman v. Alaska Truss and Mfg. Co.,* 677 P.2d 1215, 1222–23 (Alaska 1983).

■ We decline to apply the *Altman* definition of "assertion" in zoning cases. We believe that estoppel should be invoked against a municipality in a zoning case "only in limited instances and with great caution." *Town of Greenwich v. Kristoff,* 2 Conn.App. 515, 481 A.2d 77, 81 (1984). Our emphasis on the "clear authorization" made by city officials in *Schneider* reflects this belief. A number of substantive policy considerations underlie this rule: (1) the defendant seeking to invoke estoppel is under at least constructive notice of the zoning ordinance he seeks to avoid; (2) the purpose of zoning is to protect the public interest and zoning regulations are drawn by representation of the public will pursuant to the political process; (3) a particular officer or individual city representative lacks authority to waive the public's right to enforce its ordinance. *See Wieck v. Dist. of Columbia Bd. of Zoning Adjust-*

---

**2.** Assert means "to state or affirm positively, assuredly, plainly, or strongly." *Webster's Third*   *New International Dictionary* 131 (1967).

*ment,* 383 A.2d 7, 13 (D.C.App.1978) (Mack, J., dissenting); Note, *Back to Square One: Estoppel Against the Government A.C.K. Immigration and Naturalization Service v. Miranda,* 16 Vanderbilt J. Transnat'l. L. 1053, 1056 (1983).

In *Utah County v. Young,* 615 P.2d 1265 (Utah 1980), the court refused to estop a county from enforcement of its zoning ordinance under circumstances similar to those in this case. The defendant in *Young* had been issued a building permit to build a barn on land zoned for agricultural use. *Id.* at 1265. The building inspector was aware that the plumbing (which included two public bathrooms) and wiring were of the type and quality used for commercial buildings. *Id.* at 1266. The defendant had communicated to the inspector that the building was to be used commercially. However, neither the county nor its agents had communicated any authorization for its commercial use to the defendant. *Id.*

■ The Utah Supreme Court held that estoppel could apply if the zoning authority committed "an act or omission upon which the developer could rely in good faith." *Id.* at 1267. If an act, it must be "clear, definite and affirmative. . . ." *Id.* If an omission, it must be a negligent or culpable omission where the party failing to act was under a duty to act. *Id.* at 1267–68. The landowner has a duty to inquire with zoning officials regarding uses permitted on his land. *Id.* at 1268. The court thus upheld the denial of estoppel. *Id.*

In short, the Utah court chose to place on the defendant the burden of determining whether a zoning ordinance applied to him in the absence of an affirmative assertion by the zoning authority that it did not. The issuance of a building permit, even though the issuer actually knew of the intended commercial use, was not sufficient to shift to the zoning official the duty of communicating permitted uses.

We agree with this approach. A business person in Alaska must bear a number of administrative burdens. He or she must obtain a business license, file and pay appropriate taxes, and obey all relevant laws. The burden of locating the business in an appropriately zoned site must fall on the business person.[3] *See also Maloof v. Gwinnett County,* 231 Ga. 164, 200 S.E.2d 749, 751 (1973).

■ Jackson's building permit authorized construction of a garage, not operation of a business. Jackson did not use his business name on the permit application and was charged at the residential, rather than commercial, permit rate. The garage was eight square feet larger than the maximum permissible "residential" garage. We cannot agree with Jackson's contention that this eight-square-foot overage (roughly one-third the area of an office desk) indicates the city's authorization of a commercial garage operation.

Except for the affirmative act of issuing him a building permit while knowing of his business, Jackson's allegations merely restate his assertion that city officials, some of whom were responsible for zoning enforcement, had actual knowledge of his business and took no action. Without more, we find no assertion by word or conduct that Jackson's business was exempt from the city's zoning ordinances. Therefore we need not determine whether his allegations could support findings of reasonable reliance, substantial prejudice and the interest of justice necessary to estop the city.

---

**3.** In *My Sister's Place v. City of Burlington,* 139 Vt. 602, 433 A.2d 275, 279 (1981), the court observed that a city deputy fire warden was charged with a duty to enforce the applicable fire code and with "knowing the law and properly advising the public." It upheld estoppel where the fire warden had been asked how to bring a specific wood frame structure into compliance for restaurant use, had supplied a detailed list of needed improvements, and a building permit was issued, but later refused to approve the restaurant because he had been mistaken as to the applicable law. *Id.,* 433 A.2d at 278. The restaurant owners had expressly sought approval for the precise use which was later denied. Jackson, on the other hand, does not allege that he discussed his business with Hackney.

## B. *Laches*

The trial court summarily dismissed Jackson's laches argument, concluding "as a matter of law that the equitable doctrine of laches is not a defense to this action to enforce the zoning ordinance."

The equitable defense of laches may bar an equitable remedy when a plaintiff has neglected to assert a right after a considerable lapse of time and thus has caused undue prejudice to the defendant. *Copper River School Dist. v. State*, 702 P.2d 625, 629 (Alaska 1985), *see also Carlo v. Gustafson*, 512 F.Supp. 833, 837 (D.Alaska 1981). We have not previously ruled whether laches may apply to bar a local government from enforcing its zoning regulations by injunction. The vast majority of jurisdictions do not invoke laches to bar a zoning enforcement action. *Corvallis Sand & Gravel v. Land Board*, 250 Or. 319, 439 P.2d 575, 578 (1968); *Waller v. Sanchez*, 618 S.W.2d 407, 409 (Tex.Civ.App. 1981); *City of Yonkers v. Rentways Inc.*, 304 N.Y. 499, 109 N.E.2d 597 (1952); *see generally* 7 P. Rohan, *Zoning and Land Use Controls*, § 52.08[4](a) at 52–75.[4] *But see City of Hancock v. Hueter*, 118 Mich. App. 811, 325 N.W.2d 591, 593–94 (1982); *Wieck v. Dist. of Columbia Bd. of Zoning Adjustment*, 383 A.2d 7, 11–12 (D.C.App. 1978). All the policy reasons which apply to deny estoppel against a municipality, *supra* at 10, also apply to laches. Furthermore, because under laches the only fault of a local government is its inaction, additional policy considerations operate to deny its effect. A city's inactivity is not necessarily wrong; it may be the result of a reasonable decision to use limited enforcement resources for other matters. Indeed, a zoning board cannot police every possible violation. The remedy of nonenforcement of a law is a drastic one for such "fault." *Wieck*, 383 A.2d at 13 (Mack, J., dissenting). Furthermore, the only "reliance" which a landowner can show under a laches theory is that he or she relied upon nonenforcement of a law. *Id.* at 14 (Mack, J., dissenting).

Indeed, all the cases we have found invoking laches against a municipality seeking to enforce zoning ordinances involved third party purchasers of nonconforming property. *Hueter*, 325 N.W.2d at 592; *Wieck*, 383 A.2d at 12; *In Re Heidorn's Appeal*, 412 Pa. 570, 195 A.2d 349, 351 (1963). The *Heidorn* court stated:

> While courts are reluctant, and should be, to impose the sanction of laches on governmental divisions, equity cannot close its eyes to the sloth, indifference or official neglect of a municipal body any more than it can to the neglect of an individual where such neglect harms an *innocent person.*

195 A.2d at 351 (emphasis added). Jackson is not an "innocent person" as a third-party purchaser might be in a case such as *Heidorn*, where nothing put the purchaser on notice that an existing porch roof violated a setback requirement.

We have previously considered the application of laches in cases involving the public interest in two situations. In *Concerned Citizens of South Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 457 (Alaska 1974), we allowed laches as a defense where the tardy plaintiff sought to attack the existence of a public hospital. The important public interest represented by the hospital was a key factor in the holding.

In *Moore v. State*, 553 P.2d 8, 20 (Alaska 1976), the "public interest" was asserted by a private plaintiff who challenged issuance of state oil leases on environmental grounds. We held that laches would not bar the challenge, in part because of the public interest. *Id.* We said

> [w]hile we cannot agree with plaintiff's assertion that laches should never be applied when the public interest is at stake, neither do we accept defendant's contention that the public interest status of a case is irrelevant to whether laches should be applied. Instead, we choose to

---

**4.** 3 A. Rathkopf and D. Rathkopf, *The Law of Zoning and Planning* § 45.05 at 45–45 cites the following cases denying laches despite long enforcement delays:

weigh the importance of the public interests in question, and the difficulties and merits of bringing a case of this type to court, as part of the overall process of balancing the equities of a particular case....

*Id.* at 19.

The importance of the public interest in a zoning case may depend to a large extent on the specific zoning ordinance at issue. Thus, the setback restriction at issue in *Heidorn* was primarily a matter of esthetics. 195 A.2d at 351–52. The public interest in such a case may be low. The separation of business from residential use at issue here protects residents from essential but potentially nuisance-producing activities and from population and traffic congestion. *See* D. Mandelker & R. Cunningham, *Planning and Control of Land Development*, 143–48 (2d ed. 1985). While the record is meager as to any hazards to residential development from the Jackson car repair and sales business, we do not question that Kenai has a strong and valid interest in enforcing this separation.

While we do not state that laches can *never* be a defense to a zoning enforcement action, we agree that it "should not be permitted to frustrate the enforcement of a valid zoning regulation except in the clearest and most compelling circumstances." *Universal Holding Co. v. North Bergen Township*, 150 A.2d at 49. We hold that inaction by zoning officials, even though they have actual knowledge of a violation for 18 years, is insufficient to invoke laches here.[5]

III.

Viewing the evidence in the light most favorable to Jackson, we conclude that the City of Kenai has met its burden of showing in its motion for summary judgment that the defense of estoppel is inapplicable for Jackson as a matter of law. We also agree with the trial court in this case that the defense of laches is not available.

Accordingly, the trial court's entry of summary judgment is AFFIRMED.

*Donovan v. City of Santa Monica* [88 Cal. App.2d 386], 199 P.2d 51 (Cal.App.1949) (20 years); *Appeal of Phillips* [113 Conn. 40], 154 A. 238 (Conn.1931) (50 years); *Gregory v. City of Wheaton* [23 Ill.2d 402], 178 N.E.2d 358 (Ill.1961) (10 years); *Building Inspector v. Sanderson* [372 Mass. 157], 360 N.E.2d 1051 (Mass.1977) (four to five years); *City of Kansas City v. Wilhoit*, 237 S.W.2d 919 (Mo.App.1951) (25 years); *Universal Holding Co. v. Norger [North] Bergen Township* [55 N.J.Super. 103], 150 A.2d 44 (N.J.Super.App.Div.1959) (8 years); *Fabini v. Kammerer Realty Co.* [14 Misc.2d 95], 175 N.Y.S.2d 964 (N.Y.Sup.1958) (25 years plus); *In re Hepner*, 152 N.Y.S.2d 984 (N.Y. Sup.1956) (14 years); *City of Yonkers v. Rentways, Inc.* [304 N.Y. 499], 109 N.E.2d 597 (N.Y.1952) (almost 20 years); *Bartlett v. City of Corpus Christi*, 359 S.W.2d 122 (Tex.Civ. App.1962) (8 years); *City of Milwaukee v. Leavitt* [31 Wis.2d 72], 142 N.W.2d 169 (Wis.1966) (19 years); *Welch v. City of Evanston* [87 Ill.App.3d 1017, 42 Ill.Dec. 835], 409 N.E.2d 450 (Ill.App.1980) (52 years; court discussed estoppel).

5. Delay in enforcement may appropriately be considered in an evaluation of estoppel, under the fourth (interest of justice) part of the *Schneider* test. 685 P.2d at 97.