**Lloyd L. BARBER, Jr., Appellant,**

v.

**MUNICIPALITY OF ANCHORAGE, Appellee.**

**No. S–2252.**

Supreme Court of Alaska.

June 30, 1989.

---

Lloyd L. Barber, Jr., Anchorage, pro se.

Mary A. Gilson, Asst. Mun. Atty., and Richard D. Kibby, Mun. Atty., Anchorage, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

The primary focus of this appeal centers on the question of whether an Anchorage sign ordinance violates a merchant's constitutional rights to free speech, equal protection or due process.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

In 1985, the Municipality of Anchorage enacted amendments to an ordinance regulating new and existing signs within the municipality. The amended ordinance prohibits off-premises advertising signs,[1] portable signs,[2] and roof signs.[3] The ordinance also limits the use of temporary signs to a period of sixty days.[4]

Lloyd Barber leases a print shop in Anchorage. In November of 1986 he was denied a permit to erect a roof sign on the building. Sometime between November of 1986 and February of 1987 Barber was denied a permit to run an underground utility line which, if granted, would have permitted him to erect a lighted, permanent sign in the parking lot. He was told that underground utility permits could not be issued between October 15 and April 15. Apparently frustrated by these futile attempts to comply with the sign ordinance, Barber placed a portable sign in the parking lot adjoining the leased premises.

The Municipality cited Barber for displaying his portable sign. Barber then sued the Municipality seeking to enjoin enforcement of the ordinance.[5] Barber alleged that the sign ordinance violated his constitutional rights of free expression, due process, and equal protection. Barber additionally asserted that enforcement of the sign ordinance violated his civil rights under 42 U.S.C. § 1983. Although the Municipality eventually dismissed the citation, it filed an answer and counterclaim in which it sought to enjoin Barber from displaying the portable sign. Barber then moved for a temporary restraining order and a preliminary injunction. During the temporary restraining order hearing, the superior court suggested, and the parties agreed, that the motion and opposition be treated as cross-motions for summary judgment.

Following oral argument on the cross-motions for summary judgment, the court issued an oral decision and subsequently entered a final judgment in favor of the Municipality.[6]

## II. DOES THE ANCHORAGE MUNICIPAL SIGN ORDINANCE VIOLATE THE FIRST AMENDMENT?

 Barber argues that the municipal sign ordinance is unconstitutional because it bears no relationship to any legitimate governmental purpose. The Municipality contends that the ordinance is constitutional because it directly furthers aesthetic

---

1. AMC 21.45.160(B)(2).

2. AMC 21.45.160(D).

3. AMC 21.45.160(F).

4. AMC 21.45.160(C).

5. Barber represented himself throughout the course of the lawsuit.

6. The judgment entered by the superior court addresses only Barber's complaint. It does not speak to the Municipality's counterclaim. After the judgment was entered, the parties stipulated to the dismissal of the Municipality's counterclaim.

concerns in the least restrictive manner possible.[7]

A state may curtail speech when necessary to establish a significant and legitimate governmental interest. It is further established that the first amendment of the United States Constitution "forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others."[8] This doctrine has no application to the instant case. The sign ordinance in question is content-neutral in that it classifies signs on the basis of physical characteristics, and not on the basis of the viewpoints they present.[9] There is no evidence in the record of bias or censorship in the Municipality's enactment or enforcement of this ordinance.

In *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), the Supreme Court stated:

[I]n *Central Hudson Gas & Electric Corp. v. Public Service Comm'n,* 447 U.S. 557, 65 L.Ed.2d 341, 100 S.Ct. 2343 (1980), we held: "The Constitution ... accords a lesser protection to commercial speech than to other constitutionally guaranteed expression. The protection available for a particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation." *Id.,* at 562–63, 65 L.Ed.2d 341, [348–349,] 100 S.Ct. 2343 (citation omitted). We then adopted a four-part test for determining the validity of government restrictions on commercial speech as distinguished from more fully protected speech. (1) The First Amendment protects commer-

cial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective. *Id.* at 563–566, 65 L.Ed.2d 341, [349–351,] 100 S.Ct. 2343.[10]

*Id.* at 507–08, 101 S.Ct. at 2892, 69 L.Ed.2d at 814–15.

It is established that the government's interest in aesthetics is substantial and should be accorded respect.[11] In this regard the Court has stated:

We reaffirm the conclusion of the majority in Metromedia. The problem addressed by this ordinance—the visual assault on the citizens of Los Angeles presented by an accumulation of signs posted on public property—constitutes a significant substantive evil within the City's power to prohibit. "The city's interest in attempting to preserve or improve the quality of urban life is one that must be accorded high respect."

*Members of the City Council v. Taxpayers for Vincent,* 466 U.S. 789, 807, 104 S.Ct. 2118, 2130, 80 L.Ed.2d 772, 789 (1984) (citations and brackets omitted).

In support of its contention that the purpose of the ordinance was to promote aesthetic values, the Municipality presented Assembly Memorandum No. AM 963–85, which was prepared by the Municipality's Director of Community Planning for submission to the Assembly by the Mayor. The memorandum states in part:

7. In the superior court the Municipality also argued that the ordinance was partly intended to promote traffic safety.

8. *Members of the City Council v. Taxpayers for Vincent,* 466 U.S. 789, 804, 104 S.Ct. 2118, 2128, 80 L.Ed.2d 772, 786 (1984).

9. *See* AMC 21.45.160(E)(2), (F).

A content-neutral government regulation which is aimed at a goal unrelated to the suppression of free expression violates the first amendment if it unduly restricts the flow of information or ideas. L. Tribe, *American Constitutional Law* § 12–23, at 977–78 (2d ed. 1988).

10. *Compare United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672,

680 (1968), where the Supreme Court articulated its test for determining the validity of government restrictions on more fully protected speech.

There is no question raised in this record that Barber's "commercial" speech concerned unlawful activity or was misleading.

11. In *Metromedia,* Justice White, writing for the plurality, concluded that the city's aesthetic interests were sufficiently substantial to provide justification for a content-neutral prohibition against the use of billboards. 453 U.S. at 507–08, 101 S.Ct. at 2892, 69 L.Ed.2d at 814–15.

The basic premise underlying the proposed changes is that the Municipality has the responsibility to set the necessary standards for public safety, community aesthetics and enhancement of the community's natural resources. The ordinance also recognizes, however, the responsibility of the Municipality to balance these community-wide needs with private economic interests and to promote the free expression of ideas without undue government interference.[12]

. . . .

The most prominent nuisance sign in Anchorage is the portable sign. The proposed ordinance would eliminate these signs. The elimination of portable signs is not a new concept, and in fact they have been eliminated just recently in both Homer and Kenai. Portable signs have generated many enforcement problems including placement in the right of way, failure to provide for proper electrical connections (a prominent violation is an extension cord strung accross a parking lot), and they tend to be unsecured to a foundation which allows them to be blown down or away during Anchorage's frequent high winds. The strongest consensus on restricting certain types of signs was to prohibit portable signs.

Viewed in the light most favorable to Barber, the evidence in the record demonstrates that the Municipality banned portable and roof signs because they are widely perceived as aesthetic blights.

Given that the sign ordinance is adequately justified by substantial aesthetic concerns on the part of the Municipality, the only question remaining is whether the ordinance is overly restrictive. In this regard the Eleventh Circuit held in *Harnish v. Manatee County*, 783 F.2d 1535 (11th Cir.1986), that

> the next step is the scrutiny of the regulation to see whether the means chosen advance the goal. If the means reasonably advance the goal and there is no evidence in support of a finding that less restrictive means are available, the court should not attempt to speculate as to whether less restrictive means exist. Rather, analysis should be limited to whether the means are reasonably and narrowly drawn to further the objective.[13]

*Id.* at 1540.

Our review of the record leads us to the conclusion that the incidental restriction on commercial speech contained in the questioned ordinance is narrowly tailored to achieve the Municipality's aesthetic goal of eliminating visual blight, and that alternative means of communication remain available to Barber.[14] Assuming that Barber cannot erect any wall signs consistent with the sign ordinance,[15] he may still erect a

---

**12.** The memorandum also states that the purpose of the ordinance is:

> To address the issues of public safety and community aesthetics, the proposed ordinance prohibits off-premise/billboard type signs, prohibits portable signs, restricts signs to below the roofline of buildings and restricts free-standing signs to no more than 45 feet. The ordinance also makes less restrictive signage in the commercial zones, allowing an unlimited number of signs and a wide range of sizes, styles and designs.

**13.** The Supreme Court of the United States has been respectful of local government efforts to eliminate aesthetic blight:

> If the city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them.

*Metromedia,* 453 U.S. at 508, 101 S.Ct. at 2893, 69 L.Ed.2d at 815; *Taxpayers for Vincent,* 466 U.S. at 817, 104 S.Ct. at 2135, 80 L.Ed.2d at 795.

**14.** Professor Tribe is of the view that a content-neutral restriction on speech will be upheld if the constitutional claimant has the ability to reach the same audience with the same message using an alternate channel of communication. Provided that an equally effective channel of communication remains available, the restriction is deemed insubstantial, and the community need only show a rational justification for its regulatory choice. L. Tribe, *American Constitutional Law* § 12–23, at 982 (2d ed. 1988).

**15.** Any sign which advertises Barber's business is required to be located on his business premises. AMC 21.45.160(B)(2). The ordinance prohibits use of a portable sign. AMC 21.45.160(D). Barber applied for a permit to erect a roof sign, but the Municipality denied the permit, presumably because Barber's proposed sign would extend above the ridgeline of the roof in violation

permanent sign in the parking lot. If the sign is not lighted, Barber will not need a utility permit. In the event Barber wants a lighted sign, he can apply for a utility permit during the summer months. Barber is also entitled to display a temporary sign for a maximum of sixty days.[16]

On this first amendment issue, the superior court found in part that:

AMC 21.45.160(D) is narrowly tailored to achieve its purposes, and alternative means of communication remain available.[17]

We thus conclude that the ordinance as applied to Barber does not violate the first amendment.[18]

## III. DOES THE SIGN ORDINANCE ARBITRARILY DEPRIVE BARBER OF EQUAL PROTECTION OF THE LAWS?

Barber argues that he was deprived of equal protection of the laws because the Municipality arbitrarily classifies and regulates roof signs, portable signs, and temporary signs. The Municipality contends that the ordinance is rationally related to a legitimate state interest.

In *Alaska Pacific Assurance Co. v. Brown*, 687 P.2d 264, 269 (Alaska 1984), we described what level of scrutiny is to be applied in the circumstance of an alleged violation of equal protection under the

Alaska Constitution. The minimum level of equal protection scrutiny in Alaska, also denominated a rational basis test, is more demanding than the federal rational basis test. Under Alaska's minimum level of constitutional review, there must be a *substantial* relationship between legitimate legislative goals and the means chosen to achieve those goals. Since Barber has not been deprived of a fundamental constitutional right,[19] and the ordinance does not affect a suspect class, the ordinance will be upheld as long as (1) the statutory purpose is legitimate and within the police power of the state; (2) the means chosen substantially further the legislative purpose; and (3) the municipal interest in its chosen means outweighs Barber's interest in using a temporary, portable, or roof sign. *Id.*

■ In our preceeding first amendment analysis we concluded that the Municipality has an important and legitimate aesthetic interest in regulating signs and that the ordinance is narrowly tailored to further its objective. Although the ordinance is possibly underinclusive because it does not prohibit the display of aesthetically displeasing permanent signs, a statute is not invalid merely because it might have gone further than it did. *Katzenbach v. Morgan*, 384 U.S. 641, 657, 86 S.Ct. 1717, 1727, 16 L.Ed.2d 828, 839 (1966). A legislature need not eliminate all evils at the same time; it

---

of AMC 21.45.160(F). *See also* AMC 21.35.020(93).

**16.** AMC 21.45.160(C)(4).

Prior to the commencement of the instant case in superior court, Barber lost a challenge to AMC 21.24.160(D) in the United States District Court for the District of Alaska. In that litigation, Barber claimed that the ban on portable signs with regard to political advertisements violated his constitutional rights. *Barber v. Municipality of Anchorage*, No. A86–397 (D.Alaska Aug. 15, 1986). In the federal case counsel for Barber stipulated in part that "AMC 21.45.160(D) is narrowly tailored to achieve its purposes, and alternative means of communication remain available."

**17.** The superior court also found that:

The legislative purposes which led the Anchorage Assembly to ban portable signs are twofold: (1) a concern for community aesthetics, and (2) traffic safety.

In its oral opinion the court concluded in part:

So you have many alternatives, and this ordinance itself does not—is not invalid on grounds that you have no remaining modes of commercial sign speech available to you; because you do. You have all of the same methods, manners, size, colors, shapes, you simply cannot use them on the roof, as a portable sign, off premises, or as a temporary sign. But you can erect any of those things in the other category of signs.

**18.** *Contra Mobile Sign, Inc. v. Brookhaven*, No. 85 C 2896, slip op. at 7–8 (E.D.N.Y. June 20, 1986).

**19.** Given our holding that Barber has not been deprived of any fundamental right of expression, the only remaining interest he has is an interest in conveying his message by a particular means.

may attack a problem step-by-step, starting with the worst abuses. *Id.*

██ The superior court concluded that Barber's equal protection claims fell short because: "First, Anchorage's ban on portable signs is based on the government interests of community aesthetics and traffic safety.... Second, Anchorage was not required to address all aesthetic or traffic safety evils in order to confront the harm posed by portable signs."

In our view Barber has not demonstrated that his right to equal protection under either the federal or Alaska Constitution has been violated. Therefore, we hold that the superior court did not err in deciding not to invalidate the ordinance as an arbitrary deprivation of Barber's right to equal protection of the laws.

## IV. DOES THE MUNICIPALITY'S SELECTIVE ENFORCEMENT OF THE ORDINANCE DEPRIVE BARBER OF EQUAL PROTECTION OF THE LAWS UNDER THE UNITED STATES CONSTITUTION?

██ Barber presented evidence, and the Municipality admitted, that the Municipality has not uniformly enforced the sign ordinance. Even in the face of citizen complaints about existing temporary and off-premises signs, the evidence indicates that the Municipality has enforced the ordinance primarily, if not exclusively, against portable signs. Barber argues that this selective enforcement against portable signs deprived him of equal protection of the laws.

Selective enforcement of a statute violates the equal protection clause only if it is part of a deliberate and intentional plan to discrimiante based on an arbitrary or unjustifiable classification. *State v. Reefer King Co., Inc.,* 559 P.2d 56, 64–65 (1976), *modified on reh'g,* 562 P.2d 702 (Alaska 1977); *Nelson v. State,* 387 P.2d 933, 935 (Alaska 1964). The constitutional claimant has the initial burden of producing evidence

demonstrating discriminatory intent. 559 P.2d at 64–65.

Viewed in the light most favorable to Barber, the evidence shows only that the Municipality enforces the portable sign prohibition more stringently than it enforces some of the other prohibitions. In *Jackson v. Kenai Peninsula Borough,* 733 P.2d 1038 (Alaska 1987), we refused to permit a defendant to assert a laches defense against enforcement of a zoning ordinance. We stated:

> A city's inactivity is not necessarily wrong; it may be the result of a reasonable decision to use limited enforcement resources for other matters. Indeed, a zoning board cannot police every possible violation. The remedy of nonenforcement of a law is a drastic one for such "fault."

*Id.* at 1043 (citation omitted).

Concerning the alleged selective enforcement issue, the superior court found that:

> The Municipality of Anchorage has not enforced AMC 21.45.160(D) in a discriminatory manner. There has been no showing of any unlawful purpose in the Municipality of Anchorage's failure to achieve 100 percent compliance.[20]

On the basis of our study of the record, we affirm the superior court's holding that Barber's equal protection rights under the federal constitution were not violated by the Municipality's alleged selective enforcement practices.

## V. ATTORNEY'S FEES.

██ The superior court awarded the Municipality $1,000 in partial attorney's fees pursuant to Civil Rule 82. Because Barber brought this action pursuant to 42 U.S.C. § 1983, any award of attorney's fees is governed by 42 U.S.C. § 1988 rather than Civil Rule 82. *See DeNardo v. Municipality of Anchorage,* 775 P.2d 515, 517–518, (Alaska 1989). As this court stated in *DeNardo,* a prevailing defendant may only recover attorney's fees in a section 1983

---

**20.** In its oral opinion the superior court noted in part that:

> First of all, you have not brought before the court evidence that the enforcement against

you was based upon any—or the result of any of the impermissible purposes which would give rise to a violation of your 14th Amendment rights.

action if the plaintiff's action was "frivolous, unreasonable or without foundation." *Id.* "Although the Municipality prevailed, there is nothing in the record from which we could conclude that [Barber's] suit was frivolous, unreasonable or without foundation." *Id.* Accordingly, we reverse the superior court's award of partial attorney's fees to the Municipality.[21]

AFFIRMED in part, REVERSED in part.

---

**21.** We have reviewed Barber's argument regarding his due process claim and have concluded that it is lacking in merit.