Deborah A. LUPER, Appellant,

v.

CITY OF WASILLA, Appellee.

No. S–12880.

Supreme Court of Alaska.

Sept. 11, 2009.

Kenneth P. Jacobus, Kenneth P. Jacobus, P.C., Anchorage, for Appellant.

Thomas F. Klinkner, Birch, Horton, Bittner and Cherot, Anchorage, for Appellee.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, WINFREE, and CHRISTEN, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

Deborah Luper raises dogs on property she owns in the City of Wasilla. City ordinances applicable to her property prohibited keeping more than three dogs without a permit. When the city sued Luper to enforce its ordinance, she applied for a use permit for an eighteen-dog kennel. The city denied her permit application and she appealed. After consolidating her permit appeal with the city's enforcement action, the superior court denied her appeal and granted the city summary judgment in its enforcement action. We affirm. Because substantial evidence supported the Wasilla City Planning Commission's factual findings and because the commission had a reasonable basis for interpreting its ordinance as it did, it permissibly denied Luper's permit application. Because the city disproved Luper's affirmative defenses and was otherwise entitled to summary judgment, the superior court did not err in granting summary judgment to the city in the enforcement action. Finally, the city's former three-dog "Rural Residential" limit was not unconstitutional as applied to Luper.

## II. FACTS AND PROCEEDINGS

Wasilla Municipal Code (WMC) 16.12.010 and 16.20.010–.020 are zoning ordinances that require a property owner to obtain a use permit before operating a dog "kennel" in a "Rural Residential" zoning district in the City of Wasilla.[1] An ordinance in effect at times relevant to this case defined "kennel" as "a use or lot in which more than three dogs, over four months of age, are kept."[2]

---

1. WMC 16.12.010 states that "Section 16.20.020 includes a use chart describing the type of permit needed before initiating a use of land. There are three types of permit: (1) administrative approval ('AA'); (2) use permit ('UP'); and (3) conditional use ('CU')." WMC 16.20.010 abbreviates "Rural Residential" as "RR." The WMC 16.20.020 chart contains the abbreviation "UP" in the "kennel/cattery" row under the "RR" col-

umn. Luper appears to concede that the municipal code required her to obtain a use permit to operate her kennel.

2. Former WMC 16.04.070, *amended by* City of Wasilla Ordinance Serial No. 08–41 (Sept. 8, 2008). The current WMC 16.04.070 imposes a four-dog limit, defining "kennel" as "any premises used for breeding, buying, selling, keeping or

Wasilla Municipal Code 16.16.050(A) states that a use permit "may be granted" if the applicant proves that the proposed use meets all general criteria enumerated in WMC 16.16.050 and any applicable specific criteria enumerated in WMC 16.16.060(J).

Deborah Luper owns an approximately one-acre parcel of "Rural Residential" Wasilla property, on which she operates a shetland sheepdog (sheltie) kennel with approximately eighteen dogs over four months of age. She describes the operation as a "hobby kennel." Luper applied for a use permit in May 2005; the commission denied her application. On May 8, 2006, the city filed suit in the superior court to enjoin Luper from maintaining the kennel without a use permit. Luper applied again for a use permit the same day. The Wasilla City Planning Commission held a hearing on her permit application and denied her application in June 2006. Luper appealed. On appeal the hearing officer considered the totality of evidence and the record, including evidence presented to the hearing officer, and determined that the commission did not err in denying Luper's permit appeal. Luper appealed to the superior court. In December 2006 the court consolidated Luper's permit appeal with the city's enforcement action.

The city moved for summary judgment in the enforcement action. Luper opposed the motion, asserting several affirmative defenses. In December 2006 the superior court granted the city's motion and enjoined Luper from maintaining a "kennel" on her property; the order did not directly address Luper's affirmative defenses. The city voluntarily deferred enforcement of the injunction pending the superior court's resolution of Luper's permit appeal.

In September 2007 the superior court affirmed the denial of Luper's use permit application. In the enforcement action, the superior court granted the city's motion for summary judgment on all remaining issues.

Luper appeals the rulings in both the enforcement action and her permit appeal.

## III. DISCUSSION

### A. Standard of Review

▬▬ In an administrative appeal we independently review the merits of the agency's decision.[3] Zoning board decisions "are accorded a presumption of validity."[4] We apply the "substantial evidence" standard of review to questions of fact.[5] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[6] In determining whether the commission erred in denying Luper a permit, we apply the reasonable basis standard of review,[7] under which we defer to the agency's interpretation unless it is "plainly erroneous and inconsistent with the regulation."[8]

▬▬ We review grants of summary judgment de novo, viewing the facts in the light most favorable to the non-prevailing party and affirming if there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law.[9] A plaintiff's motion for complete summary judgment must "expressly disprove every affirmative defense of the answer."[10]

boarding five or more dogs over the age of six months, whether for profit or not."

3. *Griswold v. City of Homer*, 55 P.3d 64, 68 (Alaska 2002); *Balough v. Fairbanks N. Star Borough*, 995 P.2d 245, 254 (Alaska 2000).

4. *Griswold*, 55 P.3d at 67; *Balough*, 995 P.2d at 254.

5. *Griswold*, 55 P.3d at 67–68; *Balough*, 995 P.2d at 254.

6. *Balough*, 995 P.2d at 254.

7. See *Griswold*, 55 P.3d at 67; *Balough*, 995 P.2d at 254.

8. *Pasternak v. State, Commercial Fisheries Entry Comm'n*, 166 P.3d 904, 907 (Alaska 2007) (quoting *Simpson v. State, Commercial Fisheries Entry Comm'n*, 101 P.3d 605, 609 (Alaska 2004)).

9. *Cragle v. Gray*, 206 P.3d 446, 449 (Alaska 2009) (citing *Rockstad v. Erikson*, 113 P.3d 1215, 1219 (Alaska 2005)); *Larson v. Cooper*, 90 P.3d 125, 128 n. 3 (Alaska 2004); *Balough*, 995 P.2d at 254.

10. *Jackson v. Kenai Peninsula Borough for Use & Benefit of Kenai*, 733 P.2d 1038, 1040 (Alaska 1987) (quoting *Braund, Inc. v. White*, 486 P.2d 50, 54–55 n. 6 (Alaska 1971)).

## B. Whether the Commission Erroneously Denied Luper a Use Permit

Luper argues that there are three reasons why the commission erred in denying her a use permit.[11]

■ First, she argues that the public notice of the commission hearing was "[c]onstitutionally invalid," apparently on due process grounds, because it did not contain all the information that Luper had requested be included, such as her intention to build an additional building or the fact that most of her dogs were debarked. The notice indisputably met the requirements of the applicable ordinance.[12] And it satisfied due process because it provided sufficient notice of the hearing under the ordinance; indeed, Luper does not argue to the contrary.[13]

■ Second, she argues that the judicial dismissal of a prior criminal citation against her for animal annoyance collaterally estopped the commission from making factual findings contrary to the findings made in the criminal proceeding. We are unconvinced. "[I]ssue preclusion prevents a party from pursuing an issue in a second action that is identical to one decided in the first action."[14] Because both the relevant burdens of proof[15] and the issues adjudicated[16] materially differed between the two proceedings, the dismissal did not have collateral estoppel effect on the proceedings before the commission.[17]

■ Third, she argues that the commission's factual findings were unsupported by substantial evidence and were insufficient to support denial of her permit application. The commission made three factual findings on which it appeared to base its denial: (1) there were twenty-four written comments from neighbors opposing the application and only one supporting the application; (2) there were potential groundwater contamination and drainage issues; and (3) there were potential noise and odor issues. Despite Luper's assertions to the contrary,[18] substantial evidence supported all three findings.[19]

11. Even though the hearing officer apparently considered additional evidence when Luper appealed the commission's denial, both parties on appeal assume we are only reviewing the commission's decision.

12. WMC 16.16.040(A)(2)(b) states that notice of a hearing must be published and must "set out the time, date and place of the hearing, the name of the applicant, the address or general location of the property and subject or nature of the action."

13. *See, e.g., Groom v. State, Dep't of Transp.*, 169 P.3d 626, 635 (Alaska 2007) ("We have previously held that the crux of due process is the opportunity to be heard and the right to adequately represent one's interests. While the actual content of the notice is not dispositive in administrative proceedings, the parties must have adequate notice so that they can prepare their cases." (citing *Matanuska Maid, Inc. v. State*, 620 P.2d 182, 192 (Alaska 1980); *North State Tel. Co. v. Alaska Pub. Util. Comm'n*, 522 P.2d 711, 714 (Alaska 1974))); *City of Homer v. Campbell*, 719 P.2d 683, 686–87 (Alaska 1986) ("An 'elementary and fundamental' requirement of procedural due process is notice reasonably calculated, under all the circumstances, to inform interested parties of action affecting their property rights." (citing *Mullane v. Cent. Hanover Bank & Trust*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Aguchak v. Montgomery Ward Co.*, 520 P.2d 1352 (Alaska 1974))).

14. *Beegan v. State, Dep't of Transp. & Pub. Facilities*, 195 P.3d 134, 138 (Alaska 2008) (citing *Johnson v. Alaska State Dep't of Fish & Game*, 836 P.2d 896, 906 (Alaska 1991)) (internal brackets and quotation marks excluded).

15. *See Avery v. State*, 616 P.2d 872, 873–74 (Alaska 1980) (holding no issue preclusion because burdens of proof materially differed); *see also Murray v. Feight*, 741 P.2d 1148, 1155 (Alaska 1987).

16. Lack of annoyance was the dispositive issue in the criminal case, WMC 07.04.030, but was not dispositive for the use permit. WMC 16.16.050, .060(J).

17. Nor, contrary to Luper's contention on appeal, was the commission required to give "great deference" to these findings in the criminal case; the commission's decision was supported by substantial evidence.

18. Luper asserts that the findings are not supported by substantial evidence because most of her dogs are debarked, she takes the dogs outside in groups to minimize noise, she is fastidious about dog cleanliness, one horse (for which a use permit is not required) produces more waste than all of her dogs, her lot is the lowest one in the area, and she does not have a loose-dog problem.

19. The record contains comments from at least twenty-seven neighbors opposing the application on grounds of noise, odor, and groundwater con-

Wasilla Municipal Code 16.16.050(A) requires an applicant to meet all of the criteria listed in WMC 16.16.050 and .060, including due deference to neighbors' comments, appropriate drainage, and minimal off-site impacts.[20] Because the commission's factual findings demonstrate that Luper did not meet all the criteria, the commission's interpretation of its ordinance as allowing denial of Luper's permit application was reasonable.[21] The commission therefore did not err in denying Luper's use permit application.

■ Luper argues in the alternative that the commission was required to "engage in settlement discussions" with her regarding conditions under which it would grant her a permit. But Luper's permit application did not propose any limits or conditions. At the commission hearing she proposed a twenty-adult-dog limit; the commission implicitly declined to grant a permit with only that condition. The relevant ordinances make the commission responsible only for determining whether the submitted application meets the criteria for granting a permit.[22] The ordinances do not place the burden on the commission to negotiate mutually acceptable conditions with the applicant.[23] Because Luper did not propose additional conditions, she has not preserved her contention that the commission erred in failing to grant a more-limited conditional use permit.

## C. Whether the Superior Court Erred in Granting Summary Judgment to the City

Luper conceded in the superior court that she had violated zoning ordinances, but argued that the city was not entitled to complete summary judgment because it had not disproved her affirmative defenses. Luper argues on appeal that the city did not adequately disprove her affirmative defenses,[24] and that the superior court therefore erred in granting summary judgment to the city in the enforcement action. She does not argue that there is a genuine dispute of material fact or that the undisputed facts are insufficient to establish a zoning violation as a matter of law.

■ She first asserts that the city should be estopped from enforcing its use permit requirement because when she purchased the property, she reasonably relied on the city clerk's statement that she only needed a kennel license to operate a hobby kennel. We consider four factors when estoppel is asserted against a municipality: (1) the municipality's assertion of a position by conduct or word; (2) reasonable reliance; (3) resulting prejudice; and (4) the interests of justice.[25] Luper's argument is unpersuasive because it is not reasonable to rely on a government employee's statement that is at variance with the law,[26] and because the interests of justice would not be served by binding the city on a relatively offhand verbal

tamination, among other things. Although there was some evidence that Luper's lot was the lowest in the subdivision, four neighbors expressed concerns about groundwater contamination, and the Alaska Department of Environmental Conservation commented that runoff containing animal waste "may pose health risk to adjoining property owners." Despite what appear to be significant efforts to control both noise and odor, the city received two noise complaints about Luper's dogs unrelated to the permit application.

**20.** *See* WMC 16.16.050(A)(1), (11), (14).

**21.** *See Pasternak v. State, Commercial Fisheries Entry Comm'n*, 166 P.3d 904, 907 (Alaska 2007) ("When reviewing an agency's interpretation of its own regulation, we apply the reasonable basis standard.").

**22.** *See* WMC 16.16.050, .060(J).

**23.** WMC 16.16.050, .060(J).

**24.** *See Jackson v. Kenai Peninsula Borough for Use & Benefit of Kenai*, 733 P.2d 1038, 1040 (Alaska 1987) ("A plaintiff's motion for summary judgment must prove not only every element of his cause of action, it must also 'expressly disprove every affirmative defense of the answer.'" (quoting *Braund, Inc. v. White*, 486 P.2d 50, 54–55 n. 6 (Alaska 1971))).

**25.** *Id.* at 1040–41 (citing *Municipality of Anchorage v. Schneider*, 685 P.2d 94, 97 (Alaska 1984)).

**26.** *Whaley v. State*, 438 P.2d 718, 720 (Alaska 1968) (holding that any representation by state official contradicting explicit provision of personnel rule would be unauthorized and of no effect, and therefore state was not estopped from denying effect to representation); *see also Jackson*, 733 P.2d at 1041; *State v. Alaska Land Title Ass'n*, 667 P.2d 714, 726 (Alaska 1983).

comment that is allegedly the basis for deciding whether to purchase a home.

Second, Luper argues that the city selectively enforced its ordinances against only her. Because Luper failed to meet her burden of demonstrating that the city "intended to discriminate against her based on an arbitrary or unjustifiable classification,"[27] the superior court correctly granted summary judgment to the city on this issue. Contrary to Luper's assertions, none of the evidence that Luper presented on summary judgment demonstrates differential treatment or intent to discriminate: (1) the city's admission that it had "no record of issuing a kennel license to any person other than [Luper]" in the previous three years does not demonstrate differential treatment; (2) none of the proceedings Luper identifies involving three previous permit applications demonstrates differential treatment;[28] and (3) even assuming Luper's assertions that the city did not enforce the relevant ordinances against her neighbors are true, we have held that mere failure to enforce an ordinance against others similarly situated does not itself prove selective enforcement in the absence of evidence of discriminatory intent.[29]

Finally, Luper contends that the mayor of Wasilla improperly interfered with the permit process by terminating time extensions, interfering with Luper's employment, and "tr[ying] to insert herself into the appeal proceeding." Luper presented no evidence linking this alleged conduct with the commission's denial. Luper therefore failed to demonstrate that the mayor's alleged actions interfered with the commission's consideration of her application.

Because the city has demonstrated that the three affirmative defenses Luper discusses on appeal are without merit, and there is no genuine factual dispute material to the enforcement action, we conclude that the superior court did not err in granting summary judgment for the city.

### D. Whether the Three–Dog Limit Was Unconstitutional

Luper argues that Wasilla's former three-dog limit was unconstitutional because it infringed on her property rights in both her land and her dogs.[30] When a zoning ordinance infringes on property rights we apply the minimum level of scrutiny,[31] under which the provision must bear a "fair and substantial" relationship to a "legitimate" government purpose.[32] Luper correctly concedes that the city has legitimate interests in controlling dog noise, dog odor and pollution, dog-caused disease, and loose dogs. The three-dog limit bore a "fair and substantial relationship" to those purposes. The relationship was substantial because having fewer dogs effectively and directly limited noise,

**27.** *Rollins v. State, Dep't of Revenue, Alcoholic Beverage Control Bd.*, 991 P.2d 202, 210 (Alaska 1999) (citing *Gates v. City of Tenakee Springs*, 822 P.2d 455, 461 (Alaska 1991)).

**28.** Two of the applicants were not similarly situated to Luper: one was granted a permit by a different entity (the borough instead of the city) for only four dogs, and the second was granted a permit in a commercially zoned district. The third applicant was situated similarly to Luper but was *denied* a permit in the same district as Luper.

**29.** *Rollins*, 991 P.2d at 210.

**30.** Luper does not clarify whether she is alleging a denial of substantive due process or of equal protection. An ordinance violates substantive due process if it does not bear a "reasonable" relationship to a legitimate purpose. *Premera Blue Cross v. State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins.*, 171 P.3d 1110, 1124 (Alaska 2007). Because an ordinance that bears a "fair and substantial" relationship to a legitimate purpose necessarily also bears a "reasonable" relationship to a legitimate purpose, *id.* at 1124–25, if we conclude that the ordinance satisfied equal protection we do not need to separately address whether the relationship satisfied substantive due process.

**31.** *Barber v. Municipality of Anchorage*, 776 P.2d 1035, 1039–40 (Alaska 1989).

**32.** *Premera Blue Cross*, 171 P.3d at 1122; *Pub. Employees Ret. Sys. v. Gallant*, 153 P.3d 346, 349–50 (Alaska 2007). Alaska's standard is more protective than the federal standard because it requires that the relationship be "fair and substantial" rather than merely "rational." *Alaska Civil Liberties Union v. State*, 122 P.3d 781, 787 (Alaska 2005); *Commercial Fisheries Entry Comm'n v. Apokedak*, 606 P.2d 1255, 1261–62 (Alaska 1980). An ordinance that satisfies the state standard therefore necessarily also satisfies the federal standard.

odor, pollution, health risks, and the potential for escaped dogs. The relationship was fair because it was reasonable to think that more dogs may cause more nuisances, and the ordinance simply imposed an additional requirement (obtaining a use permit) on residents who wished to have more than three dogs, shifting the burden to the dog owner to prove that the additional dogs would not annoy or threaten the health or safety of the community. The city did not completely prohibit owning more than three dogs. That the ordinance's three-dog limit can be characterized as numerically arbitrary does not mean that the ordinance itself was constitutionally arbitrary.[33] We therefore hold that the former three-dog limit was not unconstitutional.

## IV. CONCLUSION

We AFFIRM the superior court's order affirming denial of Luper's use permit application. We also AFFIRM the superior court's final judgment, entered upon summary judgment for the city, in the enforcement action.

---

**33.** *See Holt v. City of Sauk Rapids,* 559 N.W.2d 444, 446 (Minn.App.1997) ("[N]umbers chosen as legal limitations are often arbitrary: e.g., speed limits, building ordinances, statutes of limitation. The necessity of selecting some number arbitrarily does not render an ordinance itself arbitrary.").

In any event, Luper does not claim that the ordinance arbitrarily prevented her from owning one, two, or even three dogs beyond the former three-dog limit; she contends that she should be allowed to keep at least eighteen dogs over the age of four months. On appeal she argues that there was no reason she should not be allowed to keep at least twenty dogs.